UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

FRIENDS OF LYDIA ANN CHANNEL,

§
Plaintiff, §
VS. § CIVIL ACTION NO. 2:19-CV-00148
§
LYDIA ANN CHANNEL MOORINGS, LLC §
and UNITED STATES ARMY CORPS OF §
ENGINEERS §

Defendants.

## ORDER DISMISSING CLAIMS WITHOUT PREJUDICE

Pending before the Court are Defendant United States Army Corps of Engineers' ("USACE") Motion to Dismiss Friends of Lydia Ann Channel's ("Plaintiff") APA/NEPA claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Defendant Lydia Ann Channel Moorings, LLC's ("LACM") Motion to Dismiss Plaintiff's state-based public nuisance claim pursuant to Fed. R. Civ. P. 12(b)(1), and 12(b)(6) for failure to state a claim, and LACM's Motion for Judicial Notice. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's APA/NEPA claims against USACE and Plaintiff's public nuisance claim against LACM.

Further, the Court takes judicial notice of this Court's orders and the relevant pleadings from *Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs, et al.*, Case No. 2:15-cv-00514, as enumerated in the attached Appendix A.

## I.    JURISDICTION

For Plaintiff's federal claims against USACE, Plaintiff alleges jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346 because the claims are brought against a federal defendant and arise under the laws of the United States: 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act), and 42 U.S.C. § 4321 *et seq.* (the National Environmental Policy Act). Plaintiff alleges the Court's

jurisdiction extends to its state-based claim against LACM through supplemental jurisdiction under 28 U.S.C. § 1367, as the public nuisance action relates to the same controversy.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)–(c) because the alleged violations occurred in the Southern District of Texas, a substantial part of the federal agency actions and omissions giving rise to the claims occurred in this district, and LACM resides in the Southern District of Texas.

## II. FACTUAL & PROCEDURAL BACKGROUND

On January 15, 2015, USACE granted LACM a Letter of Permission ("LOP") numbered SWG-2014-00460. (D.E. 1, Ex. A, p. 1). The LOP permitted LACM to construct 82 mooring dolphins – pylons to which barges can be moored – at a project site "located off the East bank of San Jose Island adjacent to Lydia Ann Channel" ("Mooring Site"). *Id.* at 2. LACM completed construction and began operating the facility on March 16, 2015, and USACE began to receive complaints about LACM not adhering to the LOP, leading to Plaintiff filing its initial complaint against USACE and various USACE officials in their official capacities (collectively, "Federal Defendants") on December 23, 2015. *Id.*; *See Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs,* No. 2:15-CV-0514, 2017 WL 958652 (S.D. Tex. Mar. 13, 2017) ("*Lydia Ann I*"). Plaintiff sought injunctive and declaratory relief for violations of the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA")/National Environmental Policy Act ("NEPA") and Rivers and Harbors Act. *Id.* LACM intervened and Plaintiff filed its First Amended Complaint adding a claim for injunctive relief against LACM. *Id.* Plaintiff's First Amended Complaint also added a request for a preliminary injunction to restrain LACM from continuing to operate its barge fleeting facility and from using the unauthorized mooring structures. *Id.*

USACE then visited the project site on February 8, 2016, and ultimately determined the project did not comply with the authorization in the LOP. *Id.* As a result of this noncompliance, USACE suspended the LOP pursuant to 33 CFR § 325.7. *Id.* at 3. Seven months later, USACE completed its review of LACM's submitted response and revoked the LOP on September 12, 2016. *Id.* As part of the letter revoking the LOP, USACE mandated LACM to provide a restoration plan to include "an alternatives analysis of removal methods and identif[y] [LACM's] preferred removal method." *Id.* at 3.

The same day the LOP was revoked, LACM re-submitted its individual permit application for the project site. (D.E. 1, Ex. B, p. 1). On September 20, 2016, USACE responded to this application stating that LACM has "no pending individual permit application on file" and it must detail its removal and restoration plan before USACE considers "an additional individual permit application for this facility." *Id.* at 2. USACE also allowed LACM to submit retention or relocation alternatives for consideration together with their plan. (D.E. 1, Ex. A, p. 4).

On October 12, 2016, LACM responded with a plan which analyzed various ways to remove the dolphins and alternative sites for the barge mooring site, but ultimately the report suggested a "no action alternative." *Id.* at 4-6. USACE elected to process LACM's plan as a full permit application, which would include a public-interest review and environmental analysis. (D.E. 1, p. 17; D.E. 28, p. 2). On January 31, 2017, USACE published a Public Notice ("Notice") for LACM's proposed removal and restoration plan which also covered LACM's proposed alternatives. D.E. 1 at 3-9. The Notice labelled the permit application number SWG-2014-00460, the same identification number for the LOP. *Id.* at 1. The public hearing period following the Notice ended on March 2, 2017. *Id.* at 9.

On March 13, 2017, this Court granted a preliminary injunction against LACM enjoining it from operating in the Lydia Ann Channel ("the Channel"). *Id.*

On August 9, 2017, the Fifth Circuit vacated the preliminary injunction and dismissed as moot Plaintiff's claims based on the APA/NEPA and the Rivers and Harbors Act. *Friends of Lydia Ann Channel v. U.S. Army Corps of Eng'rs*, No. 17-40259, 701 F. App'x 352, 359 (5th Cir. Aug. 9, 2017) ("*Lydia Ann Remand*"). On appeal, the Fifth Circuit divided the claims related to NEPA and the APA into two parts.[1] First, the Panel dismissed any claims based on USACE's ongoing review process, because any such claim would not be ripe for judicial review and the Court would have no jurisdiction over such a claim. *See Lydia Ann Remand*, 701 Fed. App'x. at 359 (citing *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011). Plaintiff's counsel acknowledged and conceded this point at oral arguments.[2] *Id.* Next, the Panel dismissed the claims as they related to the LOP, because claims brought under the APA only relate to the *process* employed, rather than the *outcome*. *Id.* (citing *Spiller v. White*, 352 F.3d 235, 240 (5th Cir. 2003)). Since the LOP was already revoked, Plaintiff could not obtain effectual relief under the APA and the claim was barred by mootness. *Id.* (citing *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 313 (5th Cir. 2015)). Only Plaintiff's claims under the ESA remained pending on remand. *Id.*

Following the Fifth Circuit opinion, Plaintiff filed an opposed Motion to Lift Stay and an

---

[1] Plaintiff also brought claims against LACM based on violations of NEPA and the APA, however those claims were dismissed because NEPA and the APA do not provide private plaintiffs with a cause of action against nonfederal defendants. *See Lydia Ann Remand*, 701 F. App'x at 358 (citing *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 249 (5th Cir. 2006)); *see also Noe v. Metro.* Atlanta Rapid Transit Auth., 644 F.2d 434, 439 (5th Cir.1981) ("[O]ur research has failed to disclose anything to suggest a Congressional intent to recognize an implied judicial remedy for an alleged violation of NEPA."); *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005) ("A fundamental and oft-quoted principle of environmental law is that there is no private right of action under NEPA.") NEPA only imposes an obligation on the federal government, not third parties and does not contain a citizen suit provision. *See San Carlos Apache Tribe*, 417 F.3d at 1097–98.).

[2] Federal Defendants additionally contended that it "expects that it will take several months – and perhaps a few years – before a permitting decision is made. Until it completes its review, however, the Corps asserts that it lacks 'unilateral authority to force LACM to stop using the existing pilings.'" *Lydia Ann Remand*, 701 Fed. App'x. at 354.

unopposed request for a status conference on August 31, 2018. Federal Defendants and LACM filed their responses on September 21, 2018, and the status conference was held on December 3, 2018. After the status conference, the Court dismissed Plaintiff's remaining claims. Order Dismissing Remaining Claims, *Lydia Ann I*, No. 2:15-CV-0514, 2017 WL 958652 (S.D. Tex. Mar. 13, 2017); D.E. 210 ("Order Dismissing ESA Claims").

On May 25, 2019, Plaintiff filed the instant complaint against LACM and USACE. (D.E. 1). Plaintiff argues a state-based cause of action based on public nuisance against LACM while again basing its complaint against USACE on violations of the APA and NEPA in their ongoing review. *Id.* at 33–34. Plaintiff seeks injunctive and declaratory relief against both Defendants. *Id.* at 33–34. Plaintiff argues that USACE violated 33 C.F.R. §§ 325.2. 325.3, 325.7, and the APA and NEPA by not providing sufficient information for public comment, by failing to issue proper public notice, by failing to issue a new permit identification number associated with LACM's new permit application, and by disguising this new permit application as an enforcement procedure for the revoked LOP. *Id.* at 30-31. Plaintiff alleges that by ignoring procedural requirements after the revocation of the LOP, USACE is acting in an arbitrary and capricious manner. *Id.* at 32.

On July 29, 2019, LACM filed a motion to dismiss Plaintiff's public nuisance claim under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (D.E. 14). LACM also filed a motion for judicial notice of certain pleadings and orders from *Lydia Ann I*. (D.E. 15). On August 27, 2019 USACE filed a separate motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (D.E. 28).

## III. DISCUSSION

### A. Motion for Dismissal Standards

#### 1. Rule 12(b)(1) Standard

Under Fed. R. Civ. P. 12(b)(1), a claim should be dismissed for lack of subject matter jurisdiction "'when the court does not have statutory or constitutional power to adjudicate the case.'" *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the Rule 12(b)(1) challenge should be first considered. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The district court must dismiss an action if it finds subject matter jurisdiction lacking. Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of jurisdiction may be decided by the district court on any one of three separate bases: the complaint alone, the complaint supplemented by undisputed facts in the record, or facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *Ynclan v. Department of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). The court must take as true all allegations of the complaint. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995). Dismissal should not be granted "unless it appears certain that the plaintiff cannot prove any set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief." *Id.* (citing *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992)).

#### 2. Rule 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." A district court must accept the plaintiff's factual allegations as true, in the light most favorable to the plaintiff. *Mitchell v. McBryde*, 944 F.2d 229,

230 (5th Cir. 1991). Review is limited to the complaint's allegations and to the documents attached to a defendant's motion to dismiss to the extent those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "Dismissal is appropriate only if, the '[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegation in the complaint are true (even if doubtful in fact).'" *Wilson v. Houston Cmty. Coll. Sys.*, 2019 U.S. Dist. LEXIS 47813, at *4 (S.D. Tex. March 22, 2019) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. USACE's Motion for Dismissal

USACE motions the Court to dismiss Plaintiff's APA/NEPA claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because (1) there is currently no final agency action regarding USACE's ongoing administrative process that Plaintiff can challenge; and (2) the claims are unripe. (D.E. 28, pp. 5, 9; D.E. 32. pp. 3-4). Plaintiff explains that (1) its federal claims challenge USACE's revocation of the LOP and the subsequent ongoing administrative process that "relates back" to and "flows" from this revocation; and (2) these claims are ripe as Plaintiff has suffered harms because of USACE's actions. (D.E. 1, p. 11-12, 31; D.E. 21, p. 9-10). The Court concludes that: (1) there is no relevant final agency action currently reviewable, as the revocation of the LOP, nor the subsequent administrative proceedings that flows back to it, is not final agency action in regard to the currently ongoing administrative process; and (2) the claims are unripe because the administrative proceedings being challenged is still ongoing.

### 1. <u>Final Agency Action</u>

USACE argues that Plaintiff has not identified a proper final agency action in the ongoing administrative proceedings. (D.E. 32, p. 3). Further, USACE states that there is no support in case law for Plaintiff's argument that a lawsuit can be reviewable by "relating back" to a final agency

action. (D.E. 21, p. 7). Finally, USACE asserts that its review is still ongoing and "neither the Public Notice nor any other component of the ongoing administrative process is 'final' as required for judicial review under the APA." *Id.* at 7. Additionally, USACE notes that Plaintiff "concedes" that the deliberation process continues. *Id.* at 8 (citing D.E. 1, p. 12). As such, no legal consequences have arisen from its decisions. *Id.* at 9. Plaintiff, on the other hand states that USACE's ongoing administrative process "is reviewable as it relates back to final agency action" since it challenges the revocation of the LOP, which Plaintiff construes as a final decision, and the allegedly flawed administrative process that flowed from it. (D.E. 1, p. 31; D.E. 29, p. 7). In Plaintiff's own words, it "challenges what flowed from the final agency action, namely the repeated violations of USACE's own regulations and NEPA."[3] (D.E. 21, p. 7, 12).

### i. Legal Standard

The APA authorizes judicial review of a "final agency action for which there is no other adequate remedy…" 5 U.S.C. § 704. The relief available under the APA is to set aside agency action that a court finds to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2).

Courts lack subject-matter jurisdiction over agency conduct that is not construed as a final agency action. *See, e.g., Lydia Ann Remand*, 701 Fed.Appx. at 359 ("[A] federal court lacks subject matter jurisdiction if there is no final agency action under the APA."); *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc) ("Absent a specific and final agency action, we lack jurisdiction to consider a challenge to agency conduct.").

---

[3] Plaintiff alleges USACE did not follow administrative regulations in: (1) allowing LACM to submit a plan for retaining the facilities in question along with its removal and restoration plan *after* the LOP was revoked, (2) not unilaterally ordering LACM to remove the unpermitted structures even though it notified LACM that the facilities "must be removed", (3) processing LACM's submitted removal and retention plan as a full-permit application, (4) not assigning a new identification number for LACM's resubmitted individual permit application, and (5) issuing the January 2017 public notice using the same identification number of the revoked LOP. (D.E. 1, p. 17-22).

Two conditions must be satisfied for an agency action to be final: "First, the action must mark the consummation of the agency's decision-making process – it must not be merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) ("*Bennett Prongs*"); *see also Texas v. EEOC*, No. 18-10638, 2019 U.S. App. LEXIS 23498 at *10 (5th Cir. 2019).

### ii. There Is No Final Agency Action Challenged

a. First *Bennett Prong* – The revocation of the LOP nor any other agency action has not marked the consummation of the current administrative process.

Here, Plaintiff asserts that challenging USACE's revocation of the LOP as a final agency action gives this Court jurisdiction to review the allegedly arbitrary and capricious administrative process that subsequently "flowed" out of the revocation. (D.E. 1, p. 31; D.E. 29, p. 7). This Court disagrees. An agency action marks the consummation of the relevant administrative process when the agency "has asserted its final position on the factual circumstances underpinning" the agency action. *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004). The LOP's revocation does not mark the consummation of the ongoing administrative process that Plaintiff is now challenging. The revocation happened *before* the allegedly flawed process even took place. Instead, the LOP's revocation served to mark the conclusion of the prior administrative process that started when USACE decided to review LACM's operations in February 2016 which then culminated in the agency's decision to revoke LACM's permit in September 2016. The revocation of the LOP was the reason Plaintiff's APA/NEPA challenge against the LOP's issuance in *Lydia Ann I* was deemed moot by the Fifth Circuit. *Lydia Ann Remand*, 701 Fed. App'x. at 359. The revocation is not relevant to the question of whether the currently ongoing administrative proceedings have produced a final decision that consummates USACE's decision-making process.

Further, any of USACE's subsequent agency actions after the revocation of the LOP cannot be construed as consummating the agency's decision-making process regarding LACM's new permit plan. These actions are: (1) permitting LACM to include retention alternatives along its removal and restoration plan; (2) electing to consider the plan as a new permit application; and (3) issuing the subsequent January 2017 public notice. Again, USACE has not issued a final decision in any of these actions that underpins the agency's position on LACM's permit application. In accordance with 33 CFR § 325.7(a), USACE elected to process LACM's removal and restoration plan as a new application because of a significant increase in LACM's scope of activity. (D.E. 28, p. 2). 33 CFR 325.7(a) gives the district engineer authority on his own motion to "reevaluate the circumstances and conditions of any permit." This election is not a final decision that ends the current administrative process. Moreover, a public notice itself may not mark the consummation of the decision-making process. 33 CFR § 325.3(a) describes the public notice as the primary method of advising parties of the "proposed activity for which a permit is sought and of soliciting comments and information necessary" for evaluation.[4] These actions are interlocutory and intermediary steps of an ongoing administrative process which will end with USACE either granting or denying LACM's plan. Intermediate steps of a multi-stage administrative process, even if completed, are not final actions. *Qureshi*, 663 F.3d at 781 (citing *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 337 (5th Cir. 2004)).

Additionally, Plaintiff explicitly refers to an Eighth Circuit case, *Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 815 (8th Cir. 2006) to argue that denying "judicial review of

---

[4] *See, Nat'l Wildlife Fed'n v. Adamkus*, 936 F.Supp. 435, 443 (W.D. Mich. 1996) ("Consideration of public comment is an intermediate stage in the process of creating a final agency action; it is a preliminary or procedural action subject to review upon final agency action."); *Gulf Restoration Network v. U.S. Army Corps of Eng'rs*, No. CV 15-6193, 2016 WL 4987256, at *3 (E.D. La. Sept. 19, 2016) ("Because the notice and comment period is a mere step on the way to permit and approval or denial, plaintiffs must table their grievances until the permitting process is complete.")

an agency's NEPA compliance because additional steps are required [to build a project]" would undermine the statute's purpose to ensure environmental effects will not be underestimated. *Id.* at 816. Indeed, in the context of claims challenging agency action through NEPA, "[t]he Supreme Court has strongly signaled that an agency's decision to issue either a [Finding of No Significant Impact] or an environmental impact statement is a 'final agency action' permitting judicial immediate review under NEPA." *Id.*; *See Ohio Forestry Ass'n, Inc. v. Sierra Club, et. al.*, 523 U.S. 726, 737 (1998). In the present case, USACE has neither issued a Finding of No Significant Impact, an Environmental Impact Statement, or any other environmental document that this Court can review. Plaintiff has also not referenced or cited to any of these documents. Therefore, *Sierra Club* actually bolsters this Court's conclusion: without a final decision, or without the NEPA documents that this Court can review, Plaintiff cannot presently bring forth a challenge to USACE's proceedings.

b. Second *Bennett Prong* – No legal consequences have been determined.

There have also been no legal consequences, rights, or obligations for Plaintiff stemming out of USACE's agency actions after the LOP's revocation. Legal consequences are created when "the challenged agency action has the effect of committing the agency itself to a view of the law that, in turn, forces the plaintiff to alter its conduct, or expose itself to potential liability." *Texas v. Equal Emp't Opportunity Comm'n (EEOC)*, 827 F.3d 372, 383 (5th Cir.), *opinion withdrawn on reh'g*, 838 F.3d 511 (5th Cir. 2016) (per curiam). USACE's election to view the removal and restoration plan as a new permit application, the issuance and close of the 2017 public notice, or its ongoing review of LACM's retention alternatives do not force Plaintiff to alter its present conduct or expose itself to liability. Even the closure of an allegedly premature or flawed public notice does not alter Plaintiff's legal rights. *See Gulf Restoration Network v. U.S. Army Corps of Eng'rs*, 2016 U.S. Dist. LEXIS 127160, at *8 (2016). Even the revocation of the LOP itself does

11

not confer any substantive rights or obligations to Plaintiff. The revocation does not force the Plaintiff "to alter its conduct or expose itself to potential liability" at this time since it is actually LACM who is affected by the LOP's revocation. *Equal Emp't Opportunity Comm'n (EEOC)*, 827 F.3d 372, at 383. By losing the LOP, it is LACM who has its legal rights or obligations altered in regard to continuing to operate the facilities and to applying for a new permit. Only a final denial or approval of LACM's plan may create legal consequences that Plaintiff can challenge. Without this final decision, this Court does not have jurisdiction to review Plaintiff's federal claims.

### 2. Ripeness of Federal Claims

USACE contends that (1) the issues Plaintiff presents are not purely legal and are thus unripe because the administrative record presently does not currently contain the applicable NEPA documents necessary for this Court to review; (2) there is no final agency action challenged; and (3) Plaintiff's claims will "impede effective administrative [sic] of the statutory framework as it will interrupt USACE's permitting procedures and any enforcement actions it may plan to take within its discretion." (D.E. 28, p. 10-11). Plaintiff responds that its federal claims are ripe because these (1) do not rest on a future contingency since USACE has *currently* disregarded regulations throughout the ongoing administrative process; and (2) Plaintiff is harmed and directly affected if the process is not remedied (D.E. 1, p.11-12; D.E. 21, p. 9).

### i. Legal Standard

"Under Article III of the Constitution, federal courts are confined to adjudicating 'cases' and 'controversies'" *Lower Colo. River Auth. V. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 747 (2018). To be a case or controversy, the case "must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). "Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617

F.3d 336, 341 (5th Cir. 2010). Accordingly, a court should dismiss unripe cases "when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). Unripe claims are "properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Roman Catholic Diocese of Dall. V. Sebelius*, 827 F.Supp 2d 406, 415 (N.D. Tex. 2013).

"A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). In addition, claims are unripe if they rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). In the context of challenged agency actions, this involves an evaluation of whether (1) "the issues presented are purely legal;" (2) "the agency's pronouncement is a 'final agency action' within the meaning of §§ 5 U.S.C. 551(13) and 704;" (3) "the impact on the petitioners is direct and immediate;" and (4) "resolution of the issues will foster effective administration of the statute." *Merchs. Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 920 (5th Cir. 1993) (citing *Abbott Labs. v. Gardner*, 387 U.S. at 149-51) ("*Ripeness Test*"). "To find a case ripe, [the Fifth Circuit] require[s] the party bringing the challenge to establish all four factors in seeking judicial review." *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 410 n.11 (5th Cir. 1999).

### ii.  Plaintiff's Claims Do Not Satisfy Two Factors of the *Ripeness Test*

#### a.  Plaintiff's federal claims are not purely legal.

First, Plaintiff's claims are not "purely legal" because "further factual development is required." *Council of New Orleans*, 833 F.2d 583 at 586. As mentioned earlier, USACE's review process is still ongoing and as the agency states, the NEPA documents the Court needs for review have not been finalized and are not part of the administrative record. (D.E. 32, p.4). In *Lydia Ann*

*Remand*, the Fifth Circuit acknowledged that USACE had not completed review of LACM's pending application and held that there is no basis to "continue to exercise control over litigation for claims that may or may not be ultimately pursued." *Lydia Ann Remand*, 701 Fed. App'x. at 359. There have been no changes to the review process since that ruling. Without a complete record or a final decision from USACE, this Court cannot review Plaintiff's federal claims. *See Texas Independent Producers & Royalty Owners Ass'n v. United States Environmental Protection Agency*, 413 F.3d 479, 482 (5th Cir. 2005) (Challenge to an EPA proposal was unripe because the agency "never issued a final rule" with respect to the issue in the case and the proposal "contemplate[d] an additional evaluation and assessment."); *See also, Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003).

b.  Plaintiff's federal claims do not challenge a final agency action.

As discussed *supra*, there is no final agency action appropriately challenged. Therefore, Plaintiff cannot satisfy this element and the Court finds its federal claims to be unripe.

**C.  LACM's Motion for Dismissal**

LACM motions the Court to dismiss Plaintiff's state-based public nuisance claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because (1) the Court cannot extend supplemental jurisdiction over the claim; and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because (2) *res judicata* bars review; and (3) Plaintiff lacks standing because it has failed to state injuries different-in-kind from the public's. (D.E. 14, p. 1-2; D.E. 26, p. 4). Plaintiff responds that (1) the Court may extend supplemental jurisdiction over the claim because the related APA/NEPA claims are reviewable; (2) *res judicata* should not bar review because the claim has a different nucleus of facts from *Lydia Ann I*, and principles of fairness dictate that it be heard; and (3) standing is not lacking because Plaintiff's members did suffer special, different-in-kind harms. (D.E. 21, p. 9-10). As discussed in the

preceding section, Plaintiff's federal claims are dismissed without prejudice for lack of subject matter jurisdiction because there is no final agency action challenged and they are unripe for review. Without the federal claims, the Court cannot exercise supplemental jurisdiction over the public nuisance action.[5] The Court, however, does not grant dismissal based on *res judicata* or lack of standing, and as such, Plaintiff may opt to file the public nuisance claim in state court or in this Court once the federal claims ripen for review.

### 1. Supplemental Jurisdiction for Public Nuisance Claim

#### i. Legal Standard

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[A] district court may only exercise supplemental jurisdiction over pendent state law claims under 28 U.S.C. § 1367 where it has original jurisdiction over the federal law claims at issue." *United States Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 503 (5th Cir. 2018) citing *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 222 (5th Cir. 2012). "[S]ince a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state law claims." *Morrison v. Walker*, No. 1:13-CV-327, 2014 U.S. Dist. LEXIS 190160, at *4 (E.D. Tex. January 2, 2014) citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

---

[5] Plaintiff's state-law based public nuisance claim neither arises under federal law nor does it involve parties of different states and a claim for more than $75,000. *See* 28 U.S.C. § 1331; § 28 U.S.C. 1332.

### ii.    No Subject Matter Jurisdiction Over Federal Claims

As discussed *supra*, the federal claims against USACE are dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Because the federal claims should be dismissed under rule 12(b)(1), the Court cannot extend supplemental jurisdiction over the state law claim.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

### 2.    *Res Judicata* and the Plaintiff's Public Nuisance Claim

LACM moves this Court to dismiss the instant action for failure to state a claim because of *res judicata* principles.  (D.E. 14, p. 10-13).  Particularly, LACM notes that Plaintiff alleges the exact same factual situation it brought in *Lydia Ann I* which is its "view of LACM's operation and alleged harms done to Lydia Ann Channel by LACM," now recharacterized as a public nuisance claim instead of an ESA claim.  *Id.* at 12.  Plaintiff responds that this current action does not involve the same cause of action as in *Lydia Ann I* since "many of the wrongs on which [Plaintiff's] claim is based did not occur until after the conclusion of [*Lydia Ann I*]."  (D.E. 21, p. 16).  Plaintiff further contends that *Lydia Ann I* "was based primarily on claims against USACE for its improper procedure associated with its issuance of the initial permit and its failure to order LACM to cease operations following its revocation of that permit."  *Id.* at 17.  Whereas the present case, Plaintiff asserts, "is based on events that occurred since that time: most importantly, LACM's operation of a public nuisance without a permit."  *Id.* at 17.  Plaintiff also asserts that in the interest of fairness, the public nuisance claim should not be barred.  Plaintiff notes that it "sought leave to amend to add this [public nuisance] claim prior to dismissal of [*Lydia Ann I*], and the Court denied this request, indicating that the filing of a new case would be more appropriate."  (D.E. 21, p. 19).

### i.    Legal Standard

*Res judicata* bars relitigating the same facts, even when a party argues based on a legal theory not raised in the initial litigation.  *See Snow Ingredients, Inc.*, 833 F.3d 512, 522 (5th Cir.

2016); *see also Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994) (under the transactional test "the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts"). For *res judicata* to apply, four requirements must be met: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court with jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both suits. *Brooks v. Raymond Dugat Co. LC*, 336 F.3d 360, 362 (5th Cir. 2003) (citing *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994)); *Steve D. Thompson Trucking Inc.*, 870 F.2d. at 1045.

Principles of fairness may urge a court to refuse to grant preclusive effect even if *res judicata* applies. The Fifth Circuit in *Nilsen v. City of Moss Point, Mississippi* held that *res judicata* did not apply because the plaintiff was not permitted to bring her additional claim in a prior proceeding. *Nilsen v. City of Moss Point, Mississippi*, 674 F.2d 379, 385-86 (5th Cir. 1982). In *Moss Point*, the Fifth Circuit held that a plaintiff "cannot be barred on the theory that she should have brought her [current] claim in [the prior litigation] when she attempted to do so, and leave to amend was denied." *Id.* at 385-86. "[I]t would be unduly harsh" to apply *res judicata* to the plaintiff who was not permitted to bring an additional claim in the prior proceeding when she tried to do what the system encourages parties to do: to consolidate all claims into one litigation. *Id.* at 386. Fairness, as the Fifth Circuit noted in *Moss Point*, requires the plaintiff to assert the § 1983 claim in a second proceeding. *Id.* at 385.

### ii. Principles of Fairness

Given principles of fairness, this Court does not grant preclusive effect in dismissing Plaintiff's public nuisance claim. *City of Moss Point, Mississippi*, 674 F.2d at 385-86. Plaintiff asserts that in *Lydia Ann I*, it asked to be granted leave to amend and include the public nuisance claim, a request which the Court declined. (D.E. 21, p. 19). The Court acknowledges this. A

December 2018 conference call transcript among the parties and the Court shows that Plaintiff stated that it believed it had a public nuisance claim against LACM under common law. *Lydia Ann I* (D.E. 212, p. 4-5). It asked for leave to amend to add a count of public nuisance. *Id.* The Court replied and instructed Plaintiff to file a new case. *Id.* at 5. The Court reasoned that it would not be appropriate to further continue *Lydia Ann I* when the Fifth Circuit had already vacated the preliminary injunction against LACM, dismissed the ESA claims against LACM on the merits, and dismissed the APA/NEPA claims against USACE as unripe and moot. *Id.* at 5. Plaintiff, however, expressed concern, noting that if it were to start a new case alleging public nuisance, it wants to avoid "dealing with issues of what was and was not resolved when [*Lydia Ann I*] went away, dismissal with or without prejudice, on what issues." *Id.* at 9. Plaintiff contended that "it's more efficient to amend" its original complaint while *Lydia Ann I* was ongoing. *Id.* at 9. The Court reiterated that there was nothing left to amend, and Plaintiff would have to start over if further action was desired. *Id.* at 9. When Plaintiff finally asked if the Court would consider a new case related to the prior action if it is brought, the Court responded that it "will take it if it does." *Id.* at 10. This made Plaintiff acquiesce and agree to forego amendment. *Id.* at 10-11.

Given these circumstances, the Court does not bar the public nuisance claim by *res judicata*. Because Plaintiff was not permitted to bring its additional claim in the prior proceeding, fairness would dictate that Plaintiff be given a chance to plead its case in court, even if Plaintiff's public nuisance claim does satisfy *res judicata*'s four factors. *See City of Moss Point, Mississippi*, 674 F.2d at 385-86.

### 3. **Plaintiff's Standing to Claim Public Nuisance**

LACM motions to dismiss Plaintiff's state-based public nuisance claim under Fed. R. Civ. P. 12(b)(6). (D.E. 14, p. 2). LACM argues that Plaintiff has not adequately stated the "special harm" or "different in kind" injury required for it to have standing to state a public nuisance claim.

18

(D.E. 26, pp. 3-5). Plaintiff responds that it has asserted "special harms" that LACM has inflicted on Plaintiff's members who have property near LACM's facilities, namely (1) the obstruction of Plaintiff members' view of the Lydia Ann Channel, San Jose Island, and wildlife and (2) the facilities' bright lights shining through their homes at night, both constituting an interference of Plaintiff members' enjoyment of their property and are harms different from that inflicted on the general public. (D.E. 21, p. 6).

### i. Legal Standard

A public nuisance is a condition amounting to "an unreasonable interference with a right common to the general public." *Cox v. City of Dallas*, 256 F.3d 281, 289 (5th Cir. 2001) (citing Restatement (Second) of Torts § 821B(1) (1979)); *see also Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. Civ. App–Austin 1998, no pet.). Unreasonable interference may involve: (1) conduct that significantly interferes with "the public health, the public safety, the public peace, the public comfort or the public convenience," (2) conduct that "is proscribed by a statute, ordinance or administrative regulation," or (3) conduct that is continuing or "produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." Restatement (Second) of Torts § 821B(2)(a)–(c) (1979); *see also Cox*, 256 F.3d at 289. Two remedies available for public nuisance actions are damages and injunctions. *Cox*, 256 F.3d at 291. Public nuisance claims are traditionally derived from common law, which was later supplanted by statutorily defined public nuisances. Restatement (Second) of Torts §§ 821B(b)–(c). Actions based on public rights derived from common law are likely governed by state law even when adjudicated by federal courts. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[P]ublic nuisance is a matter of state law, and it is not the role of a federal court to expand state law."); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

(1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . There is no federal general common law.").

In order to have standing to enjoin a public nuisance, the plaintiff must either: (1) have the right to recover damages (2) have authority as a public official or public agency representing the state or a political subdivision, or (3) have "standing to sue as a representative of the general public, as a citizen in a citizen's action." Restatement (Second) of Torts § 821C (1979).

### ii. Plaintiff Asserts Special, Different-In-Kind Harms, One of Which, Bright Lights, May Be Grounds for Nuisance.

Plaintiff cannot establish that it either has (1) authority as a public official or public agency representing the state or a political subdivision, or (2) has "standing to sue as a representative of the general public, as a citizen in a citizen's action."[6] Therefore, in order to have standing, Plaintiff should have the right to recover damages as a private entity pursuing a public nuisance claim.

To have the right to recover damages, Texas law requires a plaintiff to show a special injury different-in-kind from that suffered by the general public. *Serafine v. Blunt*, No. 03-16-00131-CV, 2017 Tex. App. LEXIS 4606, at \*16-17 (Tex. App. – Austin May 19, 2017); *See, e.g., United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, No. 02-15-00374-CV, 2016 WL 6277370, at \*8 (Tex. App. – Fort Worth Oct. 27, 2016). A plaintiff who does not suffer special injury has no right of action to recover damages or to restrain an interference with a public right. *Hatfield v. City of Port Arthur*, 598 S.W.2d 669, 671 (Tex. Civ. App.–Beaumont 1980, no writ); *see also Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673 at 676 ("A private person...may not maintain an action based upon a public nuisance without showing a "special

---

[6] Neither of the two grounds for standing apply in this case. Plaintiff describes itself as "a domestic non-profit corporation... dedicated to the conservation and protection of the recreational use and ecological importance" of the Lydia Ann Channel and surrounding environs. (D.E. 1, p. 3). A domestic non-profit does not have the authority of a public official or public agency representing a state or political subdivision absent some exceptional grant of authority. Further, the group is not suing as a representative of the general public, as a class member in a class action, or as a citizen's action pursuant to a statute. *Cf. Carr v. Alta Verde Industries, Inc.*, 931 F.2d 1055 (5th Cir.) (citizen's action brought under the Clean Water Act).

injury" resulting from the nuisance."). The harm cannot merely be more intense than the harm inflicted on the general public, it must be a different kind of harm. Restatement (Second) of Torts § 821C (1979). Traditionally, plaintiffs established a different-in-kind harm to support standing by showing that the public nuisance in question affects plaintiff's private property rights, even if it did not amount to trespass. *See, e.g., S. Exp. Co. v. Long*, 202 F. 462, 468 (5th Cir. 1913); *Cong v. ConocoPhillips Co.*, 250 F.Supp. 3d 229, 233 (S.D. Tex. 2016); *McQueen v. Burkhart*, 290 S.W.2d 577, 579 (Tex. Civ. App.–Austin 1956, no writ).

Given the case law, Plaintiff alleges that some of its members who own property adjacent to LACM's facilities have suffered special harm because the facilities (1) obstruct their views; and (2) at night, bright lights shine into their homes, with both alleged harms interfering with their private use and enjoyment of their property. (D.E. 21, p. 6).

### a. Obstruction of View Not Grounds for Nuisance

An obstruction of another's view, however, may not be grounds for nuisance. In Texas, "a building or structure cannot be complained of as a nuisance merely because it obstructs the view of neighboring property." *Scharlack v. Gulf Oil Corp.*, 368 S.W.2d 705, 707 (Tex. Civ. App. – San Antonio 1963); see also *Harrison v. Langlinais*, 312 S.W.2d 286, 288 (Tex. Civ. App – San Antonio 1958). Other courts have ruled similarly. See, e.g., *Karasek v. Peier*, 22 Wash. 419, 427 (1900); *Collinson v. John L. Scott*, 55 Wn. App. 481, 488 (Wash. App. 1989); *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 127 (1971); *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380, 383 (Iowa Sup. 1988). Plaintiff has not referenced any special situation in which obstruction of view is one of their defined property rights. (D.E. 21, p. 6). It has not intimated possession of an easement that gives its members a right to light, air, or view of the Lydia Ann Channel, San Jose Island, and the surrounding wildlife. *Id.* It has not referenced specific cases or statutes that may enable the Court to consider obstruction of view as proper grounds for the

nuisance claim. *Id.* Therefore, LACM's facilities obstructing Plaintiff's views may not be grounds for nuisance and it is not a special harm.

### b. <u>Bright Lights May Be Grounds for Nuisance</u>

Unlike obstruction of view, bright lights can be grounds for Plaintiff's claim if sufficiently extreme. *Vestal*, 231 S.W.2d 523 at 525; *Schneider Nat't Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (2004). "The amount of annoyance or inconvenience that must be produced to constitute a nuisance depends on the varying facts of each case. *McAfee MX v. Foster*, No. 2-07-080-CV, 2008, Tex. App. LEXIS 968, at *2 (Tex. App. – Fort Worth February 7, 2008). "[I]t is not every use of one's property which works as an annoyance to the person or property of another that creates a nuisance. There must be a material or substantial injury…it necessarily depends on the facts of each case." *Gulf Oil Corp. v. Vestal*, 231 S.W.2d 523, 525 (Tex. Civ. App. – Fort Worth 1950). Examples of successful nuisance actions involving bright lights include the use of floodlights that illuminated a plaintiffs' backyard all night which interrupted sleep, and a cotton gin's operations which included bright lights that could be seen on plaintiff's property. *Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 509 (Tex. Civ. App – Eastland 2008).

There may be a genuine dispute of fact on whether LACM's facilities unreasonably interfere with Plaintiff's members' real property rights and their enjoyment. As the case law suggests, if sufficiently extreme, the bright lights from LACM's facilities may constitute a nuisance. Therefore, the bright lights may be grounds for nuisance to establish Plaintiff's standing.

### iii. Nuisances May Be Both Public and Private

LACM on its part alternatively argues that Plaintiff's assertion of special harms "are exactly the types of allegations that Texas courts have routinely deemed to be private nuisance issues" since they affect a limited number of people. (D.E. 26, p. 4) citing *Soap Corp of America v. Balis*, 223 S.W.2d 957, 960 (Tex. Civ. App. – Forth Worth 1949, writ ref'd n.r.e.). LACM

contends that Plaintiff may therefore have a claim for private nuisance but not for public nuisance. *Id.* This Court disagrees. The Fifth Circuit holds that "private and public nuisance are not set apart in rigid, mutually exclusive categories. On the contrary, "'when the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one.'" *Cox*, 256 F.3d at 289 citing Restatement (Second) of Torts § 821C cmt. e. (1979). Other courts also agree. *See, e.g., Fisher v. Zumwalt*, 128 Cal. 493, 61 Pac. 82 (1900) ("The fact that a nuisance is public does not deprive the individual of his action in cases, where, as to him, it is private and obstructs the free use and enjoyment of his private property."); *Ozark Poultry Prods., Inc. v. Garman*, 251 Ark. 389, 472 S.W.2d 714, 715 (Ark. 1971) (landowners' suit against a factory that allegedly polluted the environment could both be a public and private nuisance). In this case, Plaintiff has asserted harms that LACM's facilities allegedly cause the public.[7] It has also stated the presence of bright lights as an injury to its members' real property rights different-in-kind to what has been inflicted on the general public. (D.E. 1, p. 2-3). LACM's facilities therefore may both be a private and a public nuisance. *Cox*, 256 F.3d at 289.

### D. LACM's Motion for Judicial Notice

LACM is seeking judicial notice of pleadings and orders filed under *Lydia Ann I* which is the prior related litigation before this Court concerning the same parties, based on the same series of events, and had been concluded with finality in December 2018. (D.E. 15, p.1). LACM's request for judicial notice is in conjunction with its assertion that *res judicata* applies as a bar from re-litigating matters that have concluded in *Lydia Ann I*. The documents the Court is requested to

---

[7] In its complaint, Plaintiff further separately enumerates harms that the general public has suffered because of LACM's facilities. Harms referenced include: (1) interference with the people's common use and enjoyment of the Lydia Ann Channel, (2) environmental pollution the facilities have caused, (3) damage to ecological resources that the people have used for recreational activities and enjoyment, and (4) obstruction of waterways that the public has traditionally used. (D.E. 1, pp. 6, 8, 15-16, 26).

take notice of are enumerated in the attached Appendix A to this memorandum. Plaintiff does not oppose the motion to the extent that LACM requests judicial notice "to establish the fact of such litigation and related filings." (D.E. 20, p.1). Plaintiff however "would oppose any request for the Court to take judicial notice of these documents for any broader purpose." *Id.* Given that there is no substantial dispute regarding the motion, the Court takes judicial notice of the *Lydia Ann I* documents as prescribed by the relevant legal standards.

### 1. Legal Standard

The Court may take judicial notice of facts which are "generally known within the trial court's jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Rule 201 allows the Court to take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 401(b). "Care should be taken by the court to identify the fact it is noticing, and its justification for doing so. This is particularly necessary when a document, such as a court judgment, from which any number of distinct facts might be drawn, is the object of the notice." *Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l*, 762 F.2d 454, 459 (5th Cir.), *on reh'g sub nom* 770 F.2d 479 (5th Cir. 1985). Further, "Rule 201 authorizes the court to take judicial notice only of 'adjudicative facts,' not legal determinations." *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 831 (5th Cir. 1998). "A district court can properly take judicial notice, under Rule 201(b), of the judgment for the limited purpose of taking as true the action of the [court] in entering judgment for [one party] against [the other]…the judicial act itself is not subject to reasonable dispute." *Colonial Leasing Co. of New England*, 762 F.2d at 459.

### 2. Court Takes Judicial Notice Pursuant to the Legal Standards

Here, LACM requests orders and pleadings from *Lydia Ann I* to establish the facts from the prior action and the entry of judgment from that proceeding. (D.E. 15, p.1). Given this, LACM's motion seeks only to ask the Court to take notice of these documents to establish the truth of *Lydia Ann I*'s entry and judgment. The Court may take notice of these since the *Lydia Ann I* case is known within this Court's jurisdiction, and the source of these orders is from the Court's docket itself. In this case, the Court finds it appropriate to take judicial notice.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's APA/NEPA claims against USACE, and Plaintiff's state-based public nuisance claim against LACM.

SIGNED and ORDERED this 24th day of March, 2020.

Janis Graham Jack
Senior United States District Judge